IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JAMES PALMER**                                                                                    **PLAINTIFF**

v.                                                                                              CIV. NO. 3:23-cv-414-KHJ-MTP

**AHERN RENTALS, INC.;**                                                                       **DEFENDANTS**
**UNITED RENTALS, INC.;**
**UNITED RENTALS (NORTH AMERICA) INC**                             **(JURY TRIAL DEMANDED)**

## COMPLAINT

James Palmer's coworker Morgan McNeely mocked his "limp wrists," joked about "Brokeback Mountain," and "fingered" his ear as part of a continual stream of sex/sexuality and religious-based harassment. Palmer reported this, but rather than being stopped, McNeely was made his supervisor. As supervisor, McNeely told Palmer that he was "too gay" for a promotion he was seeking. Palmer was ultimately constructively discharged because of this harassment. For these reasons, COMES NOW the Plaintiff and alleges as follows:

### PARTIES

1. Defendant Ahern Rentals, Inc. is a Profit Corporation incorporated in Nevada.

2. On information and belief, Defendant United Rentals Inc. and/or United Rentals (North America) Inc. purchased Ahern Rentals, Inc. and took on responsibility for its unlawful actions here.

3. Defendant United Rentals, Inc., is a Profit Corporation incorporated in Delaware.

4. Defendant United Rentals (North America) Inc is a Profit Corporation incorporated in Delaware.

5. Plaintiff James Palmer is a former employee of Ahern Rentals, Inc.

6. Morgan McNeely is a current employee of Ahern Rentals, Inc.

7. Mr. McNeely was the acting supervisor of Mr. Palmer beginning in November, 2021, and was Mr. Palmer's official branch manager and supervisor from January 1, 2022, until Mr. Palmer resigned in February, 2022.

### JURISDICTION, VENUE, EXHAUSTION, and JURY DEMAND

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and § 1343 because the plaintiff brings civil rights claims arising under federal law.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the complaint took place in Rankin County, Mississippi.

10. Pursuant to the Federal Rules of Civil Procedure 38(b)(1), trial by jury is demanded on all issues so triable, and Plaintiff asserts all rights to jury trial under the Seventh Amendment of the United States Constitution.

11. In February, 2022, Mr. Palmer's employment with Defendant ended.

12. Less than 180 days thereafter, on March 8, 2022, Mr. Palmer filed a charge of discrimination with the Equal Employment Opportunity Commission. (Exhibit 1)

13. This charge raised the issues addressed by this lawsuit.

14. On May 25, 2023, Mr. Palmer was issued a Notice of Right to Sue. (Exhibit 2)

15. Mr. Palmer is timely filing this complaint after receipt of this Notice of Right to Sue.

16. Mr. Palmer has exhausted his administrative remedies.

17. Mr. Palmer demands a jury trial on all issues so triable.

## FACTS

18. Plaintiff James Palmer was hired by Ahern Rentals, Inc. in or around February 2021.

19. Mr. Palmer is a heterosexual man.

20. Mr. Palmer is a member of the Pentecostal Church.

21. In his work for Ahern Rentals, Inc., Mr. Palmer was a coworker of Mr. McNeely beginning in or around February 2021.

22. Initially Mr. McNeely worked for Ahern Rentals as an outside sales representative.

23. On information and belief, Mr. McNeely is a heterosexual man.

24. On information and belief, Mr. McNeely is a member of the Baptist Church.

25. Mr. McNeely perceived Mr. Palmer as having effeminate mannerisms and dress.

26. Mr. McNeely perceived Mr. Palmer as effeminate.

27. Mr. McNeely regarded Mr. Palmer as homosexual and/or same-sex attracted.

28. Mr. McNeely knew that Mr. Palmer was a member of the Pentecostal Church.

29. Mr. McNeely started harassing Mr. Palmer on or around mid to late March 2021.

30. Beginning at around that time, Mr. McNeely mocked and harassed Mr. Palmer on the basis of his Pentecostal religion on a regular basis.

31. Mr. McNeely would frequently mock Mr. Palmer on the basis of his Pentecostal religion and would mock the Pentecostal religion in front of other managers and other employees

32. On at least one basis Mr. McNeely mocked the Pentecostal religion for "speaking in tongues."

33. Mr. McNeely would mock Mr. Palmer for always wearing long-sleeved button down shirts and for gelling his hair.

34. Mr. Palmer's religion encourages modesty and formality in dress, including covering arms.

35. Mr. McNeely would call Mr. Palmer "pretty boy" because of his dress.

36. On one occasion Mr. McNeely did his hair exactly like Mr. Palmer in an effort to imitate and mock him.

37. Beginning also around this time, Mr. McNeely, Mr. McNeely mocked and harassed Mr. Palmer on the basis of Mr. Palmer's presumed sexuality and/or effeminacy.

38. Mr. McNeely mocked Mr. Palmer's mannerisms - such as mocking him for having "limp wrists", mocking him for his dress, and mocking him for having effeminate speech patterns - on at least a weekly basis.

39. As discussed *supra*, Mr. McNeely would mock Mr. Palmer's dress and appearance and would call him "pretty boy." Mr. McNeely may have done this on the basis of Mr. Palmer's presumed sexuality and/or effeminacy as well as on the basis of his Pentecostal religion.

40. On May 18, 2021, Mr. McNeely sent out a group text message to fellow coworkers that included a photo of a man in a pink bikini, captioned "Jimmy [the Plaintiff] has been spotted at the beach."

41. On another occasion, Mr. McNeely sent out another text message while Mr. Palmer was sheltering with a coworker from a tornado on the road under a bridge. The text message included a picture from Brokeback Mountain, a movie famous for its portrayal of gay male characters, and stated [roughly] "Watch out Jerome [the coworker], watch out for Jimmy under that bridge."

42. Mr. Palmer informed Tracy Phillips, who was the manager of the service department at Mr. Palmer's location and who was Mr. Palmer's superior, about this harassment. Mr. Phillips instructed Mr. Palmer to contact Curt Gober, the Regional President of Ahern Rentals, Inc.

43. Mr. Phillips himself also informed Mr. Gober about the problems that Mr. Palmer reported.

44. Mr. Palmer spoke with Mr. Gober about the matter. Mr. Gober told Mr. Palmer not to contact HR, and told Mr. Palmer that he himself would handle the matter.

45. Mr. Gober did come to the office and spoke with Mr. McNeely.

46. On information and belief, Mr. Gober did not impose any significant discipline on Mr. McNeely.

47. On information and belief, Mr. Gober did not inform anyone at HR about this harassment, even though he was supposed to.

48. For a short time afterwards Mr. McNeely did stop talking about Mr. Palmer's sexuality and/or effeminacy and did stop stereotyping him. However, Mr. McNeely continued to speak to Mr. Palmer in a demeaning way.

49. Approximately one month later, Mr. Gober followed up with Mr. Palmer. Mr. Palmer informed him that the harassment had not stopped.

50. The harassment issues did not improve after this second meeting with Mr. Gober.

51. Around November 2021, Mr. McNeely was informally promoted to acting branch manager, and thus became the supervisor of Mr. Palmer.

52. As a result of this promotion Mr. McNeely began working in close proximity to Mr. Palmer and worked at the same location as Mr. Palmer every day. This was

not the case when Mr. McNeely was working in his previous position as an outside sales representative for Ahern Rentals.

53. Because of this, the harassment increased.

54. Mr. McNeely would say things to him like "Hey sweetness."

55. Mr. McNeely would use effeminate finger snapping gestures to mock Mr. Palmer.

56. Mr. McNeely would speak in a "gay lisp" to mock Mr. Palmer and make mocking references to how Mr. Palmer dressed.

57. Mr. Palmer understood that Mr. McNeely was about to be promoted officially to branch manager, and that there would therefore be an opening in outside sales.

58. Mr. Palmer submitted a paperwork application for the position around December 2021. Mr. Palmer talked with Mr. McNeely about this and told Mr. McNeely that he was interested in obtaining this position around December 2021.

59. Mr. Palmer also told Mr. Phillips that he was interested in obtaining this position.

60. The outside sales position would have represented a significant promotion for Mr. Palmer, and would have entailed a significant raise from around $45,000 per year to $60,000 per year.

61. Mr. McNeely decided that Mr. Palmer should not receive the position. Mr. McNeely told Mr. Palmer that he was "too gay" for the position.

62. Kevin Boutwell, a man who appears to have more traditionally masculine mannerisms and (on information and belief) is not Pentecostal, received this position instead of Mr. Palmer.

63. On January 1, 2022, Mr. McNeely was officially promoted to branch manager.

64. Mr. McNeely continued to harass and stereotype Mr. Palmer after becoming his official supervisor.

65. On January 11, 2022, Mr. McNeely rubbed his fingers across Mr. Palmer's ear. On the same day Mr. McNeely filled his hand with hand sanitizer and rubbed it all over Mr. Palmer's arm.

66. On January 14, 2022, Mr. McNeely told Mr. Palmer to "go get pretty for me." Later on the same day Mr. McNeely stuck his finger inside of Mr. Palmer's ear and moved it around in there, as if to finger Mr. Palmer's ear.

67. At one point Mr. Palmer told Mr. Phillips that the harassment from Mr. McNeely was worsening again. Mr. Phillips had been helpful to Mr. Palmer in the past but apparently was unable to do anything about the harassment this time.

68. This constant harassment on the part of Mr. McNeely has caused Mr. Palmer to suffer serious emotional distress.

69. It became clear to Mr. Palmer that management would not fix this harassment issue, and that he could not stay in his job under these conditions. Mr. Palmer

therefore submitted a resignation letter to Ahern Rentals, Inc., on February 1, 2022. Mr. Palmer wrote that his last day would be on February 14, 2022.

## CAUSES OF ACTION

**Count I: Title VII of the Civil Rights Act - Sexual Harassment**

70. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

71. Pursuant to the Civil Rights Act of 1964, Ahern Rentals, Inc., United Rentals, Inc., and United Rentals (North America) Inc are prohibited from discriminating in the terms and conditions of employment on the basis of sex.

72. This includes sex stereotyping, perceptions of someone's relative effeminacy or masculinity, and assumptions about sexual orientation.

73. Defendants were aware that Palmer was working in a hostile environment based on sex.

74. Defendants failed to take prompt remedial action reasonably calculated to end the harassment.

75. The harassment continued as a result of this failure.

76. Mr. Palmer was harmed thereby.

**Count II: Title VII of the Civil Rights Act - Religious Discrimination**

77. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

78. Pursuant to the Civil Rights Act of 1964, Defendants are prohibited from discriminating in the terms and conditions of employment on the basis of religion.

79. Defendants were aware that Palmer was working in a hostile environment based on religion.

80. Defendants failed to take prompt remedial action reasonably calculated to end the harassment.

81. The harassment continued as a result of this failure.

82. Mr. Palmer was harmed thereby.

**Count III: Title VII of the Civil Rights Act - Failure to Promote Based on Sex**

83. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

84. Pursuant to the Civil Rights Act of 1964, Defendants are prohibited from discriminating in the granting of job positions and promotions on the basis of sex.

85. This includes denying an employee a promotion on the basis of their presumed sexuality and/or effeminacy.

86. Defendants discriminated against Mr. Palmer by constructive discharge when they denied Mr. Palmer a promotion on the basis of his presumed sexuality and/or effeminacy.

87. As a result of Defendants' unlawful conduct, Mr. Palmer was harmed.

**Count IV: Title VII of the Civil Rights Act - Failure to Promote Based on Religion**

88. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

89. Pursuant to the Civil Rights Act of 1964, Defendants are prohibited from discriminating in the granting of job positions and promotions on the basis of religion.

90. This includes denying an employee a promotion on the basis of their religion.

91. Defendants discriminated against Mr. Palmer by constructive discharge when they denied Mr. Palmer a promotion on the basis of his membership in the Pentecostal church.

**Count V: Title VII of the Civil Rights Act - Constructive Discharge Based on Sex**

92. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

93. Pursuant to the Civil Rights Act of 1964, Defendants are prohibited from discriminating in the terms and conditions of employment on the basis of sex.

94. Defendants discriminated against Mr. Palmer by constructive discharge when they failed to remediate Mr. McNeely's conduct sufficiently to enable Mr. Palmer's continued safe employment.

95. As a result of Defendants' unlawful conduct, Mr. Palmer was harmed.

**Count VI: Title VII of the Civil Rights Act - Constructive Discharge Based on Religion**

96. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

97. Pursuant to the Civil Rights Act of 1964, Defendants' are prohibited from discriminating in the terms and conditions of employment on the basis of religion.

98. Defendants' discriminated against Mr. Palmer by constructive discharge when they failed to remediate Mr. McNeely's conduct sufficiently to enable Mr. Palmer's continued safe employment.

99. As a result of Defendants' unlawful conduct, Mr. Palmer was harmed.

## REMEDIES

100. Plaintiff seeks the following remedies:

    a. Back pay;

    b. Reinstatement and/or front pay, as appropriate;

    c. Compensatory damages for emotional distress and any other non-pecuniary harm flowing from the Defendants' unlawful actions;

    d. Consequential damages and any other pecuniary harms flowing from Defendants' unlawful actions;

e. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

f. Pre- and post-judgment interest;

g. Attorney fees;

h. Costs;

i. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

j. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

k. A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and/or,

l. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on June 28, 2023,

                                                    JAMES PALMER

BY: */s/ Joel Dillard*
Joel Dillard (MSB No. 104202)
JOEL F. DILLARD, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372, ext. 2
joel@joeldillard.com