UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES PALMER                                                                   PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:23-CV-414-KHJ-MTP

AHERN RENTALS, INC., et al.                                          DEFENDANTS

ORDER

Before the Court is Defendant Ahern Rentals, Inc.'s [36] Motion to Dismiss. The Court grants the motion in part and denies it in part. The Court grants Palmer leave to amend his complaint within 14 days.

I. Background

Palmer brings this Title VII discrimination lawsuit against his former employer, Ahern Rentals, Inc. (Ahern), and two successor companies, United Rentals, Inc. and United Rentals (North America) Inc. He looks to hold Defendants liable for the actions of Morgan McNeely—a former coworker turned supervisor—who allegedly harassed, failed to promote, and constructively discharged Palmer based on his sex and religion. *See* First Am. Compl. [30] at 1.

Ahern hired Palmer in February 2021, and the alleged harassment began one month later. *See id.* ¶¶ 16, 27. Palmer claims McNeely harassed him for "his Pentecostal religion" and "presumed sexuality and/or effeminacy." *Id.* ¶¶ 29, 35. The alleged harassment included:

- "mock[ing] the Pentecostal religion in front of other managers and other employees";

- "mock[ing] the Pentecostal religion for 'speaking in tongues'";
- "mock[ing] Mr. Palmer for always wearing long-sleeved button[-]down shirts and for gelling his hair";
- "call[ing] Mr. Palmer 'pretty boy' because of his dress";
- "[styling] his hair exactly like Mr. Palmer in an effort to imitate and mock him";
- "mock[ing] Mr. Palmer's mannerisms—such as . . . for having 'limp wrists' . . . [and] effeminate speech patterns";
- "sen[ding] out a group text message to fellow coworkers that included a photo of a man in a pink bikini, captioned 'Jimmy [Palmer] has been spotted at the beach'"; and
- "sen[ding] out another text message while Mr. Palmer was sheltering with a coworker from a tornado . . . under a bridge . . . [that] included a picture from Brokeback Mountain . . . and stated [roughly] . . . 'watch out for Jimmy under that bridge.'"

*Id.* ¶¶ 29–39. Palmer notified his manager of McNeely's behavior, and the manager "instructed [him] to contact Curt Gober, the Regional President of Ahern[.]" *Id.* ¶ 40.

Palmer complied, contacted Gober, and explained "the problems" with McNeely. *Id.* ¶ 41. Gober told Palmer "not to contact HR, and . . . that [Gober] himself would handle the matter." *Id.* ¶ 42. Gober then met with McNeely to discuss Palmer's complaints. *See id.* ¶ 43. For a "short time" following the meeting, McNeely stopped stereotyping and "talking about [Palmer's] sexuality and/or effeminacy." *Id.* ¶ 46. Palmer alleges, however, that McNeely "continued to speak to [him] in a demeaning way." *Id.* So Palmer informed Gober that the harassment continued, and Gober met with McNeely again. *See id.* ¶¶ 47–48. Palmer alleges the harassment persisted even after the second meeting. *Id.* ¶ 48.

Then, in November 2021, "McNeely became the acting branch manager," making him "Palmer's supervisor." *Id.* ¶¶ 49–50. The promotion caused Palmer and McNeely to "work[] in close proximity . . . at the same location . . . every day." *Id.* ¶

51. Palmer claims this made the harassment increase. *Id.* ¶ 52. According to Palmer, McNeely's harassment now included:

- "say[ing] things to [Palmer] like 'Hey sweetness'";
- "us[ing] effeminate finger[-]snapping gestures to mock Mr. Palmer";
- "speak[ing] in a 'gay lisp' to mock Mr. Palmer and mak[ing] mocking references to how Mr. Palmer dressed"; and
- "decid[ing] that Mr. Palmer should not receive [a promotion because Palmer] . . . was 'too gay' for the position."

*Id.* ¶¶ 53–55, 59–60.

On January 1, 2022, McNeely went from "acting" branch manager to "official" branch manager. *Id.* ¶¶ 49, 62. McNeely's harassment continued and included:

- "rubb[ing] his fingers across Mr. Palmer's ear";
- "fill[ing] his hand with hand sanitizer and rubb[ing] it all over Mr. Palmer's arm";
- "t[elling] Mr. Palmer to 'go get pretty for me'"; and
- "st[icking] his finger inside of Mr. Palmer's ear and mov[ing] it around in there, as if to finger Mr. Palmer's ear."

*Id.* ¶¶ 64–65. Palmer claims that "management would not fix th[e] harassment issue, and that he could not stay in his job under these conditions." *Id.* ¶ 68. So he resigned from working at Ahern in February 2022, *id.*, and filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on March 1, 2022. [30-1] at 3.

The EEOC issued his Right to Sue letter on May 25, 2023. [30-2] at 1. Palmer now sues Defendants for six alleged violations of Title VII: (1) Sexual Harassment; (2) Religious Discrimination; (3) Failure to Promote Based on Sex; (4) Failure to Promote Based on Religion; (5) Constructive Discharge Based on Sex; and (6) Constructive Discharge Based on Religion. [30] ¶¶ 126–55. Ahern moves to dismiss

3

all but Count III—Failure to Promote Based on Sex. The Court addresses the remaining five Counts below.

II.     Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court views the facts "in the light most favorable to the plaintiff." *Id.* (citing *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But it will "not strain to find inferences favorable to the plaintiff[]" or accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Mere "formulaic recitation of the elements" of a cause of action will not suffice. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court can consider "'the contents of the pleadings, including attachments thereto,' in ruling on a motion under Rule 12(b)(6)." *Berry v. Auto. Ins. Co. of Hartford*, No. 3:14-CV-46, 2014 WL 1681329, at *1 (S.D. Miss. Apr. 28, 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

III.   Analysis

Title VII bars workplace discrimination based on sex or religion. 42 U.S.C. § 2000e-2(a)(1). This prohibition encompasses harassment that takes the form of a tangible employment action or a hostile or abusive working environment. *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). A Title VII plaintiff must file a charge of discrimination with the EEOC specifying the alleged discriminatory actions. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018). Mississippi requires a plaintiff to file this charge within 180 days of the discriminatory act. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980).[1]

According to Palmer, Ahern created a hostile work environment due to sexual and religious harassment. [30] ¶¶ 126–38. He also argues that Ahern did not promote and constructively discharged him based on his sex and religion. *Id.* ¶¶ 139–55. Ahern moves to dismiss because, among other things, Palmer's hostile work environment claims rely on untimely conduct. *See* Ahern's Supp. Mem. [37] at 5–8. The Court turns first to the timeliness of Palmer's claims.

---

[1] In states that have a local or state agency equivalent to the EEOC, plaintiffs have 300 days to file a charge, provided they have begun proceedings with the state or local agency. 42 U.S.C. § 2000e-5(e). Mississippi has no such agency, so the 180-day period applies. *See Harding v. Huntington Ingalls Indus.*, No. 1:15-CV-274, 2015 WL 6812242, *1–2 (S.D. Miss. Nov. 5, 2015).

To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1). For a hostile work environment claim, however, a "plaintiff is not limited to filing suit on events that fall within this statutory time period because h[is] claim 'is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quotations omitted). The Court may therefore "consider the entire scope of the hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* (quotation omitted). The Fifth Circuit has articulated three limits on this "continuing violation doctrine":

> (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement."

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 738 (5th Cir. 2017) (quoting *Stewart*, 586 F.3d at 328).

Relying on the second limitation, Ahern argues that its meeting with McNeely was an "intervening action by the employer," which prevents Palmer from relying on the continuing violation doctrine. [42] at 4–5; *see also* [37] at 6 (arguing that Palmer "specifically acknowledged" that he "reported the alleged conduct[,] . . .

Ahern intervened, [and] 'Mr. McNeely did stop talking about [Palmer's] sexuality and/or effeminacy and did stop stereotyping him.'").[2]

Ahern correctly argues that the alleged violation must "be continuing" and that an "intervening action by the employer, among other things, . . . sever[s] the acts that preceded it from those subsequent to it[.]" *Heath*, 850 F.3d at 738. "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Stewart*, 586 F.3d at 329 (quotation omitted). But the "'[p]rompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quotation omitted). "This is 'a fact-specific inquiry'" that the Court declines to resolve at the motion-to-dismiss stage. *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 456 (5th Cir. 2024) (quoting *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014)).

Contrary to Ahern's view, "not every response by an employer will be sufficient to absolve the employer of liability under Title VII." *Id.* (quoting same); *see also Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 437 (5th Cir. 2005) (recognizing that an employer may still "be held liable . . . [if the] response was not reasonably calculated to halt the harassment"). Making this determination "will necessarily depend on the particular facts of the case, such as the remedial steps taken and the severity of the harassment." *Harvill*, 433 F.3d at 437 (internal

---

[2] This meeting occurred sometime between March and mid-to-late May 2021. *See* [30] ¶¶ 27, 38, 40–43. Palmer filed his charge of discrimination with the EEOC on March 8, 2022. *Id.* ¶ 10.

quotation marks and quotation omitted). The Court will be better equipped to make this determination at the summary-judgment stage.[3]

For now, the Court resolves all reasonable inferences in favor of Palmer and finds that the pleadings do not prevent the application of the continuing violation doctrine. The Amended Complaint does not conclusively establish that Ahern's meeting with McNeely constituted an intervening action reasonably calculated to end the harassment.[4] The Court thus turns to Ahern's remaining arguments.

A. Sex-Based Claims

According to Ahern, Palmer does not state a sex-based hostile work environment or constructive discharge claim. *See* [37] at 7–8.

---

[3] Indeed, "the issue of a statute-of-limitations bar is more appropriately resolved on summary judgment when the complaint does not conclusively establish that the claims are barred by the statute of limitations." *Goings v. Lopinto*, No. CV 22-2549, 2023 WL 2709826, at *3 (E.D. La. Mar. 30, 2023) (citation omitted); *see also, e.g.*, *HSBC Bank USA, Nat'l Ass'n v. TFHSP, LLC*, No. 4:17-CV-542, 2017 WL 8727601, at *5 (E.D. Tex. Dec. 14, 2017) ("Where a statute of limitations defense raised in a motion to dismiss requires factual determinations and the evidence concerning those determinations is unclear, such an affirmative defense is properly considered at the summary judgment stage, when the parties' arguments can be considered along with competent summary judgment evidence.").

[4] The Fifth Circuit has identified situations where an employer's response constituted prompt remedial action as a matter of law. *See e.g.*, *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 611, 616 (5th Cir. 1999) (finding prompt remedial action when harasser's "conduct ceased its offensive nature" and the harasser never touched or spoke to the victim again); *Tucker v. United Parcel Serv., Inc.*, 734 F. App'x 937 (5th Cir. 2018) (finding prompt remedial action when employer began investigation, "moved [victim] to a separate work area, instructed [harasser] not to enter that work area, counseled [harasser] on its sexual harassment and professionalism policies, provided an escort to help [the victim] feel safer, and the sexual harassment ceased"). But it addressed those cases at summary judgment with the benefit of discovery. Here, McNeely's harassment continued even after meeting with the supervisor. *See* [30] ¶¶ 43–48. The Court declines to resolve this issue at the motion-to-dismiss stage.

1. Hostile Work Environment

Palmer "need not make out a prima facie case of discrimination in order to survive a [R]ule 12(b)(6) motion to dismiss for failure to state a claim." *Golden v. McDonough*, No. 1:21-CV-129, 2022 WL 1714485, at *3 (S.D. Miss. Mar. 29, 2022) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). Rather, he "need only plausibly allege facts going to the ultimate elements of [his] claim." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). The ultimate elements of a hostile work environment claim are "allegation[s] that an employer has created 'a working environment heavily charged with . . . discrimination.'" *Golden*, 2022 WL 1714485, at *3 (quoting *Raj*, 714 F.3d at 330–31). Against this backdrop, the Court considers whether Palmer alleges enough facts to support his hostile work environment claim based on sex.

Palmer alleges in his Amended Complaint that McNeely regarded him "as homosexual and/or same-sex attracted." [30] ¶ 25. He also claims that "McNeely mocked and harassed [him] on the basis of [his] presumed sexuality and/or effeminacy," which included "mocking [Palmer] for having 'limp wrists', mocking him for his dress, and mocking him for having effeminate speech patterns—on at least a weekly basis." *Id.* ¶¶ 35–36. Palmer pleads instances where McNeely "sent out . . . group text message[s] to fellow coworkers that included" derogatory language directed at Palmer. *See id.* ¶¶ 38–39. He also alleges other forms of conduct, such as saying "Hey sweetness" to Palmer, *id.* ¶ 53; "us[ing] effeminate finger[-]snapping gestures . . . [and] speak[ing] in a 'gay lisp' to mock Mr. Palmer,"

9

*id.* ¶¶ 54–55; telling Palmer "he was 'too gay' for" a promotion, *id.* ¶ 60; rubbing "his fingers across Mr. Palmer's ear [and] . . . fill[ing] his hand with hand sanitizer and rubb[ing] it all over Mr. Palmer's arm," *id.* ¶ 64; and "t[elling] Mr. Palmer to 'go get pretty for me,'" *id.* ¶ 65.

McNeely's conduct "w[as] obviously targeted at [Palmer's] perceived sexual orientation and sex-stereotyping." *Goings*, 2023 WL 2709826, at *5; *see also E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 456 (5th Cir. 2013) ("[A] plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping."); *id.* at 456 n.7 (collecting same-sex discrimination cases). At the motion-to-dismiss stage, the Court construes these facts in the light most favorable to Palmer. In doing so, the Court finds that Palmer sufficiently stated a hostile work environment claim based on sexual harassment. The Court now turns to Palmer's sex-based constructive discharge claim.

    2. Constructive Discharge

Palmer claims Ahern constructively discharged him when it "failed to remediate Mr. McNeely's conduct sufficiently to enable Mr. Palmer's continued safe employment." [30] ¶ 150. According to Palmer, he resigned after "[i]t became clear . . . that [Ahern's] management would not fix th[e] harassment issue, and that he could not stay in his job under these conditions." *Id.* ¶ 68. Ahern counters that "[t]he allegations in the Complaint are insufficient to establish . . . that Ahern deliberately caused Plaintiff's working condition[s] to become so intolerable that he would be forced to resign." [37] at 12. The Court agrees with Ahern.

10

"A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Simmons v. Transforce, Inc.*, No. 3:22-CV-466, 2023 WL 2192239, at *3 (S.D. Miss. Feb. 23, 2023) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton v. Dall. Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc)). "To determine whether a reasonable person would feel compelled to resign," the Fifth Circuit considers these factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Sacks v. Texas S. Univ.*, 83 F.4th 340, 347 (5th Cir. 2023) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citation omitted). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." *Id.* (citation omitted).

Palmer's Amended Complaint does not allege facts to satisfy any factor listed above. He comes closest to showing factor six, but he falls short. Indeed, he alleges only that "management would not fix th[e] harassment issue, and that [Palmer] could not stay in his job under these conditions." [30] ¶ 68. This does not show "badgering, harassment, or humiliation by the employer *calculated to encourage the*

11

*employee's resignation.*" *See Sacks*, 83 F.4th at 347 (emphasis added). The Court finds that Palmer does not plausibly state a constructive discharge claim based on sex. The Court therefore dismisses the claim without prejudice.

In responding to Ahern's motion, Palmer requests leave to amend if the Court finds his pleading inadequate. [41] at 1. The Court grants that request and gives Palmer one last chance to plead his best case. The Court instructs Palmer to plead facts going to each element of each claim. Failure to do so may result in dismissal of a claim with prejudice. The Court turns to Palmer's religion-based claims.

B. Religion-Based Claims

Palmer alleges religion-based claims for hostile work environment, failure to promote, and constructive discharge. [30] ¶¶ 133–38, 144–47, 152–55. Palmer does not allege facts to plausibly plead these claims.

To begin, Palmer's allegation that "McNeely mocked and harassed [him] on the basis of his Pentecostal religion" is a conclusory allegation. *Id.* ¶ 28. The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Sacks*, 83 F.4th at 347 (quotation omitted). Otherwise, Palmer supplies little factual support for his religion-based hostile work environment claim. He alleges that "[o]n at least one basis[,] Mr. McNeely mocked the Pentecostal religion for 'speaking in tongues.'" *Id.* ¶ 30. But a single incident of alleged harassment, unless sufficiently severe, does not give rise to a Title VII claim. *See Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (finding a single incident

12

sufficient when supervisor, in front of fellow employees, called plaintiff a racial slur that is "probably the most offensive word in English" (quotation omitted)).

In other portions of his Amended Complaint, Palmer alleges his Pentecostal religion "encourages modesty and formality in dress" and that McNeely "mock[ed] [him] for always wearing long-sleeved button[-]down shirts and for gelling his hair." *Id.* ¶¶ 31–32. But allegations that McNeely mocked Palmer for wearing long-sleeved button-down shirts and gelling his hair do not give rise to a plausible inference of religious discrimination.

These flaws extend to Palmer's religion-based failure to promote and constructive discharge claims. For example, Palmer alleges no facts connecting his Pentecostal religion to Ahern's failure to promote him. And his failure to establish his hostile work environment claim based on religion effectively precludes his constructive discharge claim on that ground. *See Simmons*, 2023 WL 2192239, at *3 ("[P]laintiff has failed to set forth factual allegations in the amended complaint which would support a hostile work environment claim. It follows that he has not pled sufficient facts to support a claim of constructive discharge."). In short, Palmer's religion-based claims suffer from pleading defects.

The Court therefore dismisses Palmer's religion-based claims without prejudice. But as explained, Palmer requested leave to amend. The Court grants Palmer that request and instructs Palmer to plead his best case.

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. The Court GRANTS in part and DENIES in part Ahern's [36] Motion to Dismiss. Counts II, IV, V, and VI are dismissed without prejudice.

The Court further GRANTS Palmer leave to amend within 14 days. Palmer must file his second amended complaint on or before April 8, 2024.

SO ORDERED, this 25th day of March, 2024.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE